IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY M. HORVATH, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> URBAN REDEVELOPMENT AUTHORITY ) <br> OF PITTSBURGH, ) <br> ) <br> ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 15-668 <br><br><br> Judge Cathy Bissoon |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

This matter is before the Court upon a Motion for Summary Judgment (Doc. 37) filed by Defendant Urban Redevelopment Authority of Pittsburgh ("URA"). For the reasons that follow, URA's Motion will be granted.

### BACKGROUND

Plaintiff Mary M. Horvath ("Horvath") was hired by URA as an Accounting Manager on January 7, 2008. Compl. (Doc. 1) at ¶¶ 5, 12. Following a promotion in November 2008, Horvath served as URA's Assistant Director of Finance until her termination on March 25, 2015. Id. At the time of her termination, her immediate supervisor was Tom Short ("Short"). Def.'s Stmt. of Facts (Doc. 39) at ¶ 5. Horvath, Short and the rest of the finance department ultimately reported to Robert Rubinstein, URA's Acting Executive Director. Id. at ¶ 6.

On July 2, 2012, Horvath commenced legal proceedings with the Pittsburgh Commission on Human Relations ("PCHR") claiming that she was being paid a substantially lower salary than her male counterparts. Id. at ¶ 35. Horvath and URA settled her PCHR claim in

December 2014.  Id. ¶ 37.  Horvath received the proceeds from that settlement in January 2015.  Horvath Depo. (Doc. 40-1) at 244.

Horvath continued to perform her job responsibilities during the pendency of her PCHR claim.  Def.'s Stmt. of Facts ¶ 38.  In late 2014, URA's outside auditor, Maher Duessel CPAs, began performing an annual financial audit for the 2014 calendar year.  Id. at ¶ 39.  At various times between December 2014 and March 2015, Horvath complained to Maher Duessel and Short about perceived billing improprieties and instances of allegedly mishandled funds.  Id. at ¶¶41-44, 47-49.  These allegations form the basis for Horvath's Pennsylvania Whistleblower Law claim.  Compl. ¶¶ 57-66.

On March 25, 2015, Rubinstein terminated Horvath's employment with URA.  Def.'s Stmt. of Facts ¶ 87; Termination Letter (Doc. 45-8) at 1-2.  By letter, Rubinstein informed Horvath that there were three reasons for her termination:  she had "intentionally interfered with the URA's administration of its FMLA policy" as it applied to another employee who had requested and been granted an FMLA-qualifying leave of absence; she had "unnecessarily, and without authority, inject[ed] herself into another personnel situation having absolutely nothing to do with [her] job responsibilities" involving an investigation into the unauthorized printing of another employee's paystubs; and she had been the subject of "consistent complaints from various departments regarding [her] uncooperative and unprofessional attitude."  Termination Letter (Doc. 45-8) at 1.[1]

---

[1] The parties vigorously dispute the circumstances surrounding Horvath's alleged interference with her co-worker's FMLA leave and the paystub investigation.  These factual disputes, however, are immaterial to the Court's resolution of the instant Motion.

**ANALYSIS**

Horvath first alleges that she was terminated in retaliation for filing a disparate pay claim with the PCHR in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq*. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. ("PHRA").[2] To state a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the participation in the protected activity and the adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). The United States Supreme Court has emphasized that Title VII retaliation claims ultimately must be proven according to "traditional principles of but-for causation." Univ. of Texas Southwestern Medical Center v. Nassar, -- U.S. --, 133 S. Ct. 2517, 2533 (2013). However, in the context of a plaintiff's burden at the *prima facie* stage, the Third Circuit Court of Appeals recently clarified that a plaintiff must only produce evidence "sufficient to raise the inference that her protected activity was the *likely reason* for the adverse employment action." Carvalho-Grevious v. Delaware State University, -- F.3d --, 2017 WL 1055567, at *6 (3d Cir. Mar. 21, 2017) (quoting source omitted) (emphasis in original). As explained by the Court:

> [T]he Supreme Court has made clear that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." [Nassar, 133 at 2533]. Understanding the retaliation[-]plaintiff's ultimate burden, we turn to the question of whether that burden differs at the *prima facie* stage of the case. We hold that it does. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) ("In assessing causation, we are mindful of the procedural posture of the case."); see also Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000) ("[T]he relative evidentiary impact of [causal evidence] may vary depending upon the stage of the McDonnell Douglas proof analysis and the procedural circumstance," *i.e.*, if proffered to satisfy a plaintiff's

---

[2] Because "the proper analysis under Title VII and the [PHRA] is identical," the Court's analysis applies equally to both claims. Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001).

> *prima facie* case for the purpose of summary judgment or if proffered to reverse a verdict). Consistent with our precedent, a plaintiff alleging retaliation has a lesser causal burden at the *prima facie* stage. See e.g., Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008) ("[T]he *prima facie* requirement for making a Title VII claim 'is not onerous' and poses 'a burden easily met.'" (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 1089, 67 L.Ed.2d 207 (1981))).
>
> Some circuits have found, albeit without much in the way of explanation, that a plaintiff must prove but-for causation as part of the *prima facie* case of retaliation. See EEOC v. Ford Motor Co., 782 F.3d 753, 770 (6th Cir. 2015) (en banc); Ward v. Jewell, 772 F.3d 1199, 1203 (10th Cir. 2014). We decline now to heighten the plaintiff's *prima facie* burden to meet her ultimate burden of persuasion. That is because we agree with the Fourth Circuit that to do so
>
>> would be tantamount to eliminating the McDonnell Douglas framework in retaliation cases . . . . If plaintiffs can prove but-for causation at the *prima facie* stage, they will necessarily be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis. Had the Nassar Court intended to retire McDonnell Douglas and set aside 40 years of precedent, it would have spoken plainly and clearly to that effect.
>
> Foster, 787 F.3d at 251. We conclude that at the *prima facie* stage the plaintiff must produce evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse [employment] action." Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) (emphasis added) (internal quotation marks omitted).

Id. at *5-6.

Consistent with this principle, Horvath cannot survive summary judgment unless she can produce evidence from which a reasonable factfinder could conclude that her PCHR action was the likely reason for her termination. A careful examination of the record reveals that she has failed to satisfy even this relatively light burden.

Horvath first contends that the amount of time between her protected activity and her ultimate termination is highly suggestive of retaliation. It is well-established that the temporal

proximity between a protected activity and an adverse employment action may provide some inference of a causal connection where the proximity is "unusually suggestive of retaliatory motive." Shaner v. Synthes, 204 F.3d 494, 505 (3d Cir. 2000). However, Horvath filed her unequal pay claim in July 2012, almost three years prior to her termination. Courts have routinely found causation lacking in situations where far shorter temporal-gaps separated the protected activity from the adverse employment action. See, e.g., C.M. v. Bd. of Educ., 128 F. App'x 876, 883 (3d Cir. 2005) (finding that a three month gap between protected activity and adverse employment action was too broad to support causation); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760-61 (3d Cir. 2004) (two month gap did not support inference of causation); Yeager v. UPMC Horizon, 698 F. Supp. 2d 523, 50 (W.D. Pa. 2010) (seven month gap suggested lack of causation).

Horvath attempts to bridge this gap by suggesting that her protected activity was the ultimate receipt of the settlement funds from her PCHR action in January 2015. Pl.'s Brief in Opp. (Doc. 50-1) at 8-9. Horvath cites no authority to support this novel proposition, and this Court's independent research has not produced any. To the contrary, "[t]he relevant date for [a] plaintiff's protected activity is the filing date" rather than "the date the lawsuit was settled." Hansen v. Alta Ski Lifts Co., 141 F.3d 1184, at *3 n.2 (10th Cir. 1998). Moreover, even if Horvath was correct, the two-and-a-half month gap between her receipt of the settlement funds and her termination is still not unusually suggestive of causation. Williams, 380 F.3d at 760-61 (two month gap insufficient to suggest causation).

Where the temporal proximity is not unusually suggestive, "a court may consider whether the record evidence, as a whole, is sufficient to raise an inference of causation." Kahan v. Slippery Rock Univ. of Pennsylvania, 50 F. Supp.3d 667, 701 (W.D. Pa. 2014). Such evidence

5

may include "evidence of ongoing antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)). Although Horvath points to two incidents that she believes support an inference of discriminatory animus, the evidence of record, even when considered in a light most favorable to Horvath, does not support her claim.

First, Horvath contends that "Rubinstein himself admitted that Plaintiff's charge of discrimination was an issue in his treatment of Plaintiff." Pl.'s Brief in Opp. at 9. Although she characterizes this as evidence of discrimination, the record reveals a more benign explanation. On February 4, 2014, Rubinstein sent an email to several URA directors cautioning them that directives issued by their superiors are expected to be carried out and that there would be consequences to failing to do so. Rubinstein Depo. (Doc. 40-2) at 96-97; Rubinstein Email (Doc. 45-9) at 4. Rubinstein explained that the purpose behind the directive was to address an issue of subordination involving Horvath, but that he "didn't want to single her out" because of her pending discrimination claim. Id. at 97. Consequently, he phrased the email as a "blanket directive to be communicated to everybody" at the director-level within the organization. Id. As explained by Rubinstein:

> [T]o be honest – I don't know if I should be saying this, but to be honest, it was during the time when we had an open EEOC [with Horvath]. I didn't want any directive specific to Ms. Horvath to be construed as a retaliatory action, so I chose to be more diplomatic about how to deliver a message.

Id. at 97-98. Rubinstein later testified that he frequently "erred . . . on doing nothing and letting things pass" with respect to disciplinary issues involving Horvath because he "was extra cautious of trying not to undertake any action that would be perceived as an aggressive action or

6

retaliatory action" in the wake of her discrimination claim.  Id. at 120.  Rather than providing evidence of discriminatory animus, Rubinstein's behavior indicates that he took his Title VII obligations seriously and carefully sought to avoid any behavior that might be construed as retaliation.  Indeed, Rubinstein testified that he believed that "[e]mployees have a right to file what they believe to be valid claims" of discrimination and that such filings are "proper actions to air those out" and determine the ultimate validity of the claims.  Id. at 120.

Horvath next observes that a third-party auditor from Maher Duessel once discussed Horvath's discrimination charge and settlement with her supervisor, Short, in connection with the agency's 2015 audit.  Pl.'s Brief in Opp. at 9.  The auditor, Kristen Dening, testified that her inquiry about Horvath's lawsuit was a routine part of her audit.  Dening Depo. (Doc. 40-6) at 108-10, 112.  It is unclear how this inquiry bears any relation to Horvath's allegations that Rubinstein harbored discriminatory animus towards her as the result of her discrimination charge.  Dening, as an independent auditor, had no role in the decision to discharge Horvath, and there is nothing in the record to suggest that her inquiry was improper or that it involved Rubinstein.  Horvath's attempt to characterize an independent third party's inquiry as evidence of the "troubling . . . culture at the URA and of Robert Rubinstein" is too illogical and attenuated to support any inference of discriminatory animus.

Finally, Horvath contends that there are inconsistencies in URA's articulated reasons for her termination that support the inference of retaliatory animus.  At the time of her termination, URA indicated that there were three reasons for her discharge:  her interference with a co-employee's FMLA rights; her interference with an investigation into an incident involving a co-employee's paystub; and general complaints about her uncooperative attitude and interpersonal conflicts with co-workers.  Termination Letter (Doc. 45-8) at 1.  Horvath contends that URA

"simply abandoned the third reason" for her termination in the course of this lawsuit. Pl.'s Brief in Opp. at 12. This is inaccurate. Rubinstein testified that Horvath was the subject of frequent complaints from her subordinates and co-workers as the result of her combative attitude, attempts to manage by intimidation and her inability to follow directives from her superiors. Rubinstein Depo. at 93-95. Short corroborated this testimony, stating that he "periodically" received complaints about Horvath from her employees throughout the duration of her employment. Short Depo. (Doc. 40-3) at 104-05. Although Rubinstein acknowledged that those complaints were not, in and of themselves, sufficient to warrant her termination, he testified that they were considered in conjunction with the other two incidents in the course of reaching the decision to terminate Horvath's employment. Rubinstein Depo. at 124. There is nothing inconsistent about an employer's representation that minor incidents that would not independently support an employee's termination might nevertheless be considered in conjunction with more egregious allegations of misconduct.

In short, Horvath's allegation of discriminatory animus is unsupported by either temporal proximity or the record as a whole. Because Horvath has failed to adduce evidence of a causal connection between her protected activity and her discharge, summary judgment is appropriate. Carvalho-Grevious, 2017 WL 1055567, at *7 (affirming summary judgment on the issue of causation where plaintiff failed to produce evidence from which a reasonable factfinder could determine that her engagement in a protected activity was the likely reason for her termination).

Having determined that summary judgment is appropriate with respect to Horvath's only federal claim, the Court must determine whether to exercise supplemental jurisdiction over her Pennsylvania Whistleblower Law claim. "Federal courts are of limited jurisdiction, and may only decide cases consistent with the authority afforded by the Constitution or statutes of the

United States." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 378 (1994). Thus, "[w]hen the claims over which a district court has original jurisdiction are resolved before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Neelu Pal v. Jersey City Med. Ctr., -- F. App'x --, 2016 WL 3774060, at *4 n.6 (3d Cir. July 15, 2016) (emphasis in original) (internal quotation marks and citations omitted). This principle applies during all pretrial stages of the litigation. See Yue Yu v. McGrath, 597 F. App'x 62, 68 (3d Cir. 2014) (affirming the district court's decision to dismiss "all of the remaining state and common law claims after awarding summary judgment to [d]efendants on all of the federal claims over which it had original jurisdiction"); Dougherty v. A.O. Smith Corp., 2014 WL 4447293, at *1 (D. Del. Sept. 8, 2014) ("Where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims, it is . . . akin to making the tail wag the dog for the [d]istrict [c]ourt to retain jurisdiction") (citation to quoted source omitted).

As Horvath's remaining Pennsylvania Whistleblower claim is entirely grounded in state law, the Court will decline to exercise supplemental jurisdiction over that claim. Id. at 68; see also 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction"). The record does not suggest the existence of any type of "extraordinary circumstances" that might justify the continued exercise of jurisdiction over claims that are entirely grounded in state law. N.J. D.E.P. v. Gloucester Envtl. Mgmt. Servs., Inc., 719 F. Supp. 325, 334-35, 337 (D. N.J. 1989) (once claim against federal officer is dismissed, "extraordinary circumstances" are required to justify continued exercise of jurisdiction) (citation to quoted sources omitted).

Consequently, Horvath's Pennsylvania Whistleblower Law claim will be dismissed, without prejudice to her refiling the same in state court.

Consistent with the foregoing, the Court hereby enters the following:

## II. ORDER

Defendant's Motion for Summary Judgment (**Doc. 37**) is **GRANTED** regarding Plaintiff's claims of retaliation under Title VII and the PHRA;[3] and the Court declines to exercise supplemental jurisdiction over her state-whistleblower claim. The Court, having finally adjudicated all claims properly before it, will issue a separate judgment order pursuant to Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.


March 29, 2017                                   s/ Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge


cc (via ECF email notification):

All counsel of record

---

[3] In light of this conclusion, Defendant's Motion (**Doc. 46**) to strike Plaintiff's responses to summary judgment is **DENIED AS MOOT**.